IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IRA DON PARTHEMORE,

    Plaintiff,                         No. 2:09-cv-2330-WBS-JFM (PC)

    vs.

M. MARTEL, et al.,

    Defendants.                   FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that he was transferred in retaliation for filing a request for cataract surgery and that he has been improperly denied this necessary surgery. This action is proceeding on plaintiff's amended complaint, filed December 9, 2009. Defendants have moved to dismiss this action for failure to exhaust administrative remedies prior to suit. On October 9, 2009, the court advised plaintiff of the requirements for opposing a motion to dismiss for failure to exhaust administrative remedies. See Wyatt v. Terhune, 305 F.3d 1033 (9th Cir. 2002). On August 25, 2010, this court issued findings and recommendations recommending defendants' motion be granted. By order filed October 7, 2010, the findings and recommendations were vacated and the parties were directed to brief the application of Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. Sept. 8, 2010) and Sapp v. Kimbrell, 623 F.3d 813 (9th Cir.

1

Sept. 27, 2010) to the issues raised in defendants' motion.  The parties have now filed their supplemental briefs.

## ANALYSIS

I. <u>Legal Standards</u>

The exhaustion of administrative remedies prior to bringing a prisoner civil rights action is required by 42 U.S.C. § 1997e(a).  The statute provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement that it imposes is mandatory.  <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).  A prisoner is required to exhaust administrative remedies for claims contained within a complaint before the complaint is filed.  <u>Rhodes v. Robinson</u>, 621 F.3d at 1005.  Compliance with this requirement is not achieved by satisfying the exhaustion requirement during the course of an action.  See <u>McKinney v. Carey</u>, 311 F.3d 1198 (9th Cir. 2002).  However, new claims based on conduct which occurs after the filing of an original complaint may be raised in an amended pleading if the administrative exhaustion requirement is satisfied prior to the time the amended pleading is filed.  See <u>Rhodes</u> at 1004-05.

> California's Department of Corrections provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. Within fifteen working days of "the event or decision being appealed," the inmate must ordinarily file an "informal" appeal, through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Cal.Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c). [Footnote omitted.] If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal level, usually conducted by the prison's Appeals Coordinator. <u>Id</u>. §§ 3084.5(b), 3084.6(c). Next are the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review is conducted by a designee of the Director of the Department of Corrections. [Footnote omitted.] <u>Id</u>. § 3084.5(e)(1)-(2).

<u>Brown v. Valoff</u>, 422 F.3d 926, 929-30 (9th Cir. 2005).  As a general rule, inmates must proceed

through the Director's Level of Review to satisfy the exhaustion requirement and regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (inmates must satisfy exhaustion requirement "regardless of the relief offered through administrative procedures" as long as some relief is available).  However, "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." Brown at 935.

Finally, claims dismissed for failure to exhaust administrative remedies should be dismissed without prejudice.  Id. at 1200.

II.  Allegations of the Amended Complaint

The amended complaint contains the following allegations relevant to the motion at bar.  Plaintiff has had cataracts in both eyes and glaucoma primarily in his right eye for several years while in prison.  Over a year before plaintiff's amended complaint, defendant Col advised plaintiff to have cataract/lens replacement surgery "which he said would greatly improve [plaintiff's] vision."  Amended Complaint, filed December 9, 2009, at 3.  In late July 2009, plaintiff filed an ADA request seeking cataract surgery.  Plaintiff heard nothing for several weeks, and then he received notice that he would receive a bright green vest with the words "Visually Impaired" on the outside.  On August 5, 2009, defendant Col agreed to request cataract surgery for plaintiff.  Later the same day, plaintiff was informed that Associate Warden Jackson had directed plaintiff to pick up the vest.  On August 6, 2009, defendant Col completed a form stating that plaintiff was legally blind.  On August 10, 2009, defendant Kissel called plaintiff to her office and told plaintiff that she was transferring him out of Mule Creek State Prison (Mule Creek) because he was wearing a visually impaired vest, which meant he was legally blind, and Mule Creek did not have facilities for legally blind people.  She also told plaintiff that the decision was "unappealable" and that defendant Kaplan would be "'on [plaintiff's] case' at [his] impending classification committee appearance for 'manipulating staff.'"  Id. at 5.  She told

plaintiff he would be sent to the California Substance Abuse Facility (SATF) in Corcoran, California.

On August 12, 2009, plaintiff was brought to a classification committee meeting led by defendant Kaplan. As a result of the hearing, plaintiff was endorsed for transfer to SATF and placed on the "speedy transfer" list. On September 8, 2009, plaintiff was examined by defendant Col. Plaintiff asked defendant Col to re-evaluate his vision. A vision test was performed, and plaintiff's vision was 20/50. Plaintiff asked how he could be rated "legally blind." Defendant Col told plaintiff "CDCR has its own standards and the 20/50 reading was irrelevant." Amended Complaint at 3D. Defendant Col refused plaintiff's request for a full examination for new eyeglasses, "saying 'it won't do any good.'" Id. at 3E. Plaintiff alleges that defendant Col fabricated the form stating that plaintiff was legally blind "in order to prevent any state expenditure on eye surgery or skin cancer surgery." Id.

On September 17, 2009, plaintiff was sent to an outside ophthalmologist. The ophthalmologist told plaintiff cataract surgery "was in order." Id. at 3F. He told plaintiff he wanted to see him in two weeks, and he measured plaintiff's lens for the lens replacement surgery. He told plaintiff that his "corrected central vision was 20/70, far from 'legally blind'". Id.

Plaintiff was transferred to SATF on September 22, 2009. On October 23, 2009, he was given a complete eye examination and a prescription for new glasses by an optometrist at SATF. The optometrist diagnosed plaintiff's corrected vision as 20/100 in his right eye and 20/60 in his left eye. On November 18, 2009, plaintiff was issued a new Form 1845 removing him from "Disabled Person Visual" (DPV) status permanently. At SATF, plaintiff was assigned to two different jobs, neither of which he could perform due to his physical condition. Plaintiff received skin cancer surgery and was awaiting biopsy results. The surgeon opined that the cancer was probably malignant melanoma. On December 1, 2009, plaintiff was seen by the contract ophthalmologist at SATF, who "expressed concern that plaintiff's cataract surgery had not been

previously performed and informed plaintiff that it should be accomplished without delay." Id. at 3G.  Plaintiff was still at SATF when he filed his amended complaint.

III.  Defendants' Motion to Dismiss

        Defendants contend that this action must be dismissed because plaintiff failed to seek administrative review of any issues presented in this action through the final level of such review, and because plaintiff filed his amended complaint before a second level administrative decision was reached on plaintiff's request for cataract surgery.  In support of their motion to dismiss, defendants present evidence that on July 7, 2009, plaintiff submitted an Americans with Disabilities Act (ADA) accommodation request seeking cataract surgery.  Declaration of Joseph Prudh'omme in Support of Defendants' Motion to Dismiss, filed March 8, 2010, at ¶ 5.  ADA accommodation requests are screened and processed like other inmate appeals.  Id.  Plaintiff's ADA accommodation request was denied at the first level review on October 16, 2009.  On December 23, 2009, the appeal was partially granted at the second level review based on, inter alia, a finding that plaintiff was scheduled for cataract surgery on January 27, 2010.  Plaintiff did not pursue this grievance to the final level of administrative review.  Id.

        On September 9, 2009, plaintiff filed another grievance requesting that he no longer be required to wear the visually impaired vest.  Id. at ¶ 6.  In that grievance, plaintiff alleged that defendant Col had falsified a medical report describing plaintiff as legally blind.  Id.  This appeal was denied at the first level of review and plaintiff did not seek further administrative review.  Id.

        Associate Warden Prudh'omme also avers that plaintiff "has not submitted a request for director's level review for any matter concerning cataract surgery, skin cancer surgery, fabrication of medical reports declaring him legally blind, or Mule Creek State Prison staff knowingly denying him skin cancer surgery and cataract surgery in order to transfer him to another institution to avoid the cost of surgery."  Id. at ¶ 7.

/////

In opposition to the motion, plaintiff directs the court's attention to exhibits appended to plaintiff's amended complaint. Among those exhibits is an appeal dated August 27, 2009, in which plaintiff alleged that he had received a chrono from the medical department stating that he had been screened for Valley fever and approved for transfer. Plaintiff asserted that this was "one more example of the concerted effort to remove [him] from Mule Creek for asserting [his] federal rights under ADA." Ex. 4 to Amended Complaint. On September 3, 2009, the appeal was screened out for failure to provide supporting documentation. Id. Also included is a grievance dated August 31, 2009, in which plaintiff complained about the endorsement for transfer to SATF and requested that the transfer be rescinded and he be given cataract surgery. Ex. 5 to Amended Complaint. On September 4, 2009, that appeal was returned to plaintiff for supporting documentation. Id.

Plaintiff contends that he was not required to appeal to the Director's Level because (1) he obtained most of the relief he sought concerning the cataract surgery, DPV status, and wearing the visually impaired vest at the second level of administrative review; and (2) some of his appeals concerning the transfer were improperly screened out for lack of documentation that plaintiff was unable to obtain.

The claims raised in the amended complaint are substantially the same as those raised in plaintiff's original complaint: in both, plaintiff claims that he was subject to a retaliatory transfer following his submission of an ADA accommodation request seeking cataract surgery, and that he was not receiving the necessary cataract surgery or necessary skin cancer surgery.[1] While plaintiff's amended complaint contains allegations of additional related events that occurred after he filed his original complaint, the amended complaint does not raise new claims. Thus, the operative date for plaintiff to have satisfied the exhaustion requirement is

/////

---

[1] Plaintiff was still at Mule Creek when he filed his original complaint.

August 20, 2009, the date on which plaintiff signed and dated his original complaint. See Rhodes, at 1003.

It is clear from the record before this court that plaintiff had not satisfied the administrative exhaustion requirement at the time he commenced this action. The only relevant grievance plaintiff filed before he commenced this lawsuit was the July 7, 2009 ADA accommodation request seeking cataract surgery, and plaintiff filed this action approximately six weeks after he submitted that request. That request was suspended on August 3, 2009, pending an appointment with defendant Col, which took place on August 6, 2009. See Ex. A to Prudh'omme Declaration. Plaintiff filed this action fourteen days after that appointment, without waiting for or seeking further administrative review. Ultimately, as plaintiff notes, by December 23, 2009, he had obtained most of the relief he sought concerning cataract surgery and his complaints about DPV status and wearing the vest through the administrative review process.[2] Plaintiff contends the fact that he obtained this administrative relief should excuse his failure to pursue administrative remedies to the Director's Level of Review. However, even if the fact that plaintiff obtained relief through the administrative process might have satisfied the exhaustion requirement, he filed this action well before he pursued the administrative review process to the level at which he was afforded relief. He did not, therefore, satisfy his obligation to exhaust administrative remedies prior to bringing this action.[3]

Plaintiff also argues that there was no administrative remedy available to him to stop his transfer to SATF. In the amended complaint, plaintiff alleges that he was told by

---

[2] Plaintiff was also returned to Mule Creek State Prison in April 2010. See Docket # 40. It is not clear from the record, however, that this was a result of the administrative grievance process.

[3] It is also true that the administrative review process had not been completed by the time plaintiff filed his amended complaint, which is dated November 25, 2009. It is not clear whether defendants satisfied the regulatory timelines for responding to plaintiff's July 7, 2009 ADA accommodation request. See tit. 15 C.C.R. § 3084.6. However, the court need not reach that issue because, as noted above, the amended complaint does not raise "new claims" within the meaning of the court's analysis in Rhodes v. Robinson, supra.

7

defendant Kissel that the "situation was unappealable and not to bother." Amended Complaint, filed December 9, 2009, at 2. As discussed above, plaintiff did, however, file a grievance on August 31, 2009, and the response to the grievance demonstrated not that there was no administrative remedy available but that plaintiff was required to provide more information to support the grievance. In Sapp v. Kimbrell, the United States Court of Appeals for the Ninth Circuit held that in order to establish that administrative remedies are unavailable due to improper screening of a grievance, an "inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) the prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Sapp, 623 F.3d at 823-824. Plaintiff has not demonstrated that the screening of certain grievances, pursuant to which he was required to provide more documentation, was either inconsistent with or unsupported by governing regulations. He has not, therefore, demonstrated that the screening process rendered administrative remedies unavailable.

For all of the foregoing reasons, this court finds that plaintiff did not exhaust available administrative remedies prior to filing this lawsuit. Accordingly, defendants' motion to dismiss should be granted and this action should be dismissed without prejudice.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' March 8, 2010 motion to dismiss be granted; and

2. This action be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

1  parties are advised that failure to file objections within the specified time may waive the right to
2  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: February 17, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

12
part2330.mtd2